UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WANDA DAVIS, ADMINISTRATRIX OF | : | |
| THE ESTATE OF MICHAEL DAVIS, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:12-CV-01583 (VLB) |
| v. | : | |
| | : | |
| GLOBE LIFE AND ACCIDENT INSURANCE | : | |
| COMPANY, | : | |
| Defendant. | : | September 27, 2013 |

MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS COMPLAINT [Dkt. #19]

I.      Introduction

The Plaintiff, Wanda Davis ("Davis"), as the Administratrix of the estate of

Michael Davis, brings this action against Defendant Globe Life and Accident

Insurance Company ("Globe"), alleging four counts: (1) breach of contract, (2)

breach of the covenant of good faith and fair dealing, (3) violations of Conn. Gen.

Stats. §§ 42-110b and 38a-815a for engaging in unfair or deceptive acts or

practices in the conduct of the business of insurance, and (4) intentional infliction

of emotional distress.  Currently before the Court is Defendant Globe's motion to

dismiss[1] counts 2, 3, and 4 pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a

_____

[1] Davis argues in her opposition brief that the Defendant's motion to dismiss is
procedurally improper as "[t]he defendant had an opportunity 'to obtain a more
complete or particular statement of the allegations of an adverse party's pleading'
by filing a request to revise" pursuant to Connecticut Practice Book § 10-35.  [Dkt.
22, P's Opp. to D's MTD, p. 15].  Plaintiff's argument is irrelevant as this action is
proceeding in federal court pursuant to the Federal Rules of Civil Procedure, not
the Connecticut Practice Book.

1

claim upon which relief may be granted.  For the reasons that follow, Defendant's Motion to Dismiss GRANTED in part and DENIED in part.

## II.   Factual Background

The following facts and allegations are taken from Plaintiff's complaint and from the documents incorporated therein, on which Plaintiff has relied in bringing suit.  [Dkt. 1, Compl. at ¶ 21].  On or before May 22, 2006, Globe issued to Plaintiff Wanda Davis a life insurance policy (the "Policy") including an accidental death benefit payable upon the accidental death of Michael Davis.  [*Id.* at ¶3; Dkt. 19-2, Policy p. 2/11].  The Policy's "Accident Death Benefit Rider" defines accidental death as a death:

> 1. As a direct result of bodily injury; and
>
> 2. Within 90 days of such injury; and
> 3. Which is not a result one of these:
>                    *   *   *
>    (d) Any kind of poison, drug, or gas, voluntarily ingested
>    unless prescribed by a doctor;
>                    *   *   *

[Dkt. 19-2, Policy Rider p. 6/11].

On October 9, 2011, the Plaintiff's decedent Michael Davis was killed in an automobile accident.  [Dkt. 1, Compl. ¶4].  The record does not indicate who was driving the vehicle or how the accident occurred.  On January 11, 2012 the State of Connecticut Office of the Chief Medical Examiner determined that Michael Davis' cause of death was "Asphyxia by Submersion" and the manner of death was accidental.  [*Id.* at ¶5].  Plaintiff made demand for the payment of the Accidental Death Benefits under the terms of the Policy, which Globe has refused

to pay.  **[*Id*. at ¶¶6, 7].**  In a letter dated April 26, 2012, Globe explained its denial, in relevant part, as follows:

> The Certificate of Death lists Michael Davis' cause of death as 'Asphyxia by submersion.'  This accident occurred when Mr. Davis' vehicle left the roadway 'at a high rate of speed', went through a chain link fence and landed in a reservoir. According to the Toxicology Report received with this claim, Mr. Davis was found to have a presence of Phencyclidine-PCP (5.0 ng/mL in blood).  Since the above policy excludes payment of accidental death benefits if death is caused or contributed to by being under the influence of any kind of poison, drug, or gas, voluntarily ingested unless prescribed by a doctor, under the terms of the policy this portion of the claim would not be eligible for benefits.

**[Dkt. 19-3, Exh. B, Denial Letter].  The letter did not state that Michael Davis was driving the vehicle at the time of the accident, the cause of the accident or that Michael Davis voluntarily ingested PCP.  The letter further advised that the denial was "based on the information we received during the course of our evaluation of this claim," and invited the Plaintiff to submit additional "information which you feel would materially affect this decision or if you feel the information received is incorrect."  [*Id*.].  Globe does not contend here nor are there any facts on the record in this case tending to show that Michael Davis was driving the accident vehicle, that he voluntarily ingested PCP, or that the presence of PCP in his blood stream caused the accident which resulted in his death.  Finally, as noted above, the Globe accidental death rider excludes death caused not merely "contributed to" by being under the influence of any kind of poison, drug, or gas, voluntarily ingested unless prescribed by a doctor, as stated in Globe's denial letter.  The**

death must have been the result of and not just contributed to by the voluntary ingestion of drugs not prescribed by a doctor.

### III.   Standard of Review

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' "  *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-

pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005)(MRK).

IV.    <u>Discussion</u>

    a.  <u>Breach of Covenant of Good Faith and Fair Dealing</u>

Defendant Globe urges the Court to dismiss Plaintiff's breach of the covenant of good faith and fair dealing claim because Plaintiff has failed to establish that Globe acted in bad faith.

> [I]t is axiomatic that the ... duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship.... In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the

> agreement.... The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term.

*Renaissance Mgmt. Co., Inc. v. Connecticut Hous. Fin. Auth.*, 281 Conn. 227, 240 (Conn. 2007) (quoting *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432–33 (Conn. 2004)).  "To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith."  *Id.*; *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 795 (Conn. 2013) (same).  "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.... Bad faith means more than mere negligence; it involves a dishonest purpose."  *De La Concha*, 269 Conn. at 433; *Capstone Bldg. Corp.*, 308 Conn. at 795 (same); *TD Bank, N.A. v. J & M Holdings, LLC*, 143 Conn. App. 340, 348 (Conn. App. Ct. 2013) (same).  "[A] plaintiff cannot state a claim for breach of the implied covenant simply by alleging a breach of the contract, in and of itself.... Instead, to state a legally sufficient claim for breach of the implied covenant sounding in contract, the plaintiff must allege that the defendant acted in bad faith.... If the plaintiff fails to set forth factual allegations that the defendant acted in bad faith, a claim for

breach of the implied covenant will not lie." *TD Bank, N.A.,* 143 Conn. App. at 349.

Bad faith is not implicated by conduct that does not impair contractual rights. *Home Ins. Co. v. Aetna Life & Cas. Co.,* 235 Conn. 185, 200 (Conn. 1995) (quoting *Habetz v. Condon,* 224 Conn. 231, 238 (Conn. 1992)).  A Plaintiff must show that he is entitled to recover under a policy before he can recover for the bad faith denial or processing of an insurance claim. *Bergen v. Standard Fire Ins. Co.,* No. CV93044099S, 1997 WL 809957, at *15 (Conn. Super. Ct. Dec. 31, 1997). However, the burden of proving that there is an exception to a risk is on the insurer. *O'Brien v. John Hancock Mut. Life Ins. Co.*, 143 Conn. 25, 29 (Conn. 1955); *Capstone Bldg. Corp.,* 308 Conn. at 788 n. 24.  The insurer must prove "with a high degree of certainty" that an exclusion clause is applicable. *Kelly v. Figueiredo,* 223 Conn. 31, 37 (Conn. 1992).  "A plaintiff cannot recover for bad faith if the insurer denies a claim that is 'fairly debatable,' i.e., if the insurer had some arguably justifiable reason for refusing to pay or terminating the claim." *McCulloch v. Hartford Life & Accident Ins. Co.,* 363 F. Supp. 2d 169, 177 (D. Conn. 2005).  While evidence of a mere coverage dispute or the insurer's mere negligence in the investigation of a claim does not demonstrate a breach of the duty of good faith and fair dealing, an insurer may not deny an insurance claim on the basis of unsupported determinations resulting from its arbitrary failure or refusal to properly perform its claims examination function. *Uberti v. Lincoln National Life Insurance Co.,* 144 F. Supp. 2d 90, 104 (D. Conn. 2001).  Thus in order to maintain a bad faith denial of insurance coverage claim a plaintiff must

show that it is entitled to coverage under the policy which was unjustifiably denied.  In defense of a bad faith claim the insurer must show that it denied coverage based on applicable coverage exclusion.  The Plaintiff has pleaded that on October 9, 2011, while the Policy was in full force and/or effect, her decedent, Michael Davis, died from asphyxia by submersion as a result of an automobile accident and that the manner of death was accidental.  She further claims that Globe refuses to pay the death benefits in accordance with the terms of the Policy to the named beneficiary.  Finally she claims Globe failed to make payment when it knew no dispute existed as to the cause of Michael Davis' death, that she was entitled to payment under the Policy, and that Globe failed to make a good faith attempt to settle the claim.  Thus the Plaintiff claims that Globe not only failed to pay, but that it did so without good cause knowing that it had no arguably justifiable reason for refusing to pay the claim, and that despite this Globe failed to attempt in good faith to settle the claim.

In *Uberti*, the court applied the public policy embodied in the Connecticut Unfair Insurance Practices Act ("CUIPA," codified at Conn. Gen. Stat. § 38a-816(6)), to determine the sufficiency of a bad faith denial of insurance claim.  144 F. Supp. 2d at 104.  The Court held that a bad faith claim may be predicated upon one of the many enumerated unfair claim settlement practices defined in CUIPA, in that case, "refusing to pay claims without conducting a reasonable investigation based upon all available information."  *Id.* (citing Conn. Gen. Stat. § 38a-816(6)(D)).  The Court recognizes, as discussed below, that a single act does not constitute a violation of the Connecticut Unfair Insurance Practices Act which

triggers punitive damages.  The prohibited and mandatory acts delineated in that act embody the public policy of this state as to insurance practices and therefore may form the basis of a common law bad faith claim for which only compensatory damages are available.  *See State v. Acordia, Inc.*, 310 Conn. 1, 12 --- A.3d ---- (Conn. 2013); *Buckman v. People Exp., Inc.,* 205 Conn. 166 (Conn. 1987).

The Unfair Insurance Practices Act also requires insurers "to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."  Conn. Gen. Stat. § 38a-816(6)(N).  The Plaintiff has sufficiently pleaded that she is entitled to payment under the Policy and that Globe failed without justifiable reason to pay her claim.  While not in her bad faith count, the Plaintiff claims in her intentional infliction of emotional distress count that the Defendant failed to promptly provide a reasonable explanation of the basis in the insurance policy and in relation to the facts or applicable law for denial of a claim in violation of the above provision.  In response, Globe attached as an exhibit to its Motion to Dismiss its denial of coverage letter in which it merely states that the exclusion of the accidental death benefit for accidental death caused by the voluntary use of an illicit drug applies because Michael Davis died while traveling in a motor vehicle while under the influence of PCP.  Globe does not state the facts upon which it asserts a high degree of certainty that Michael Davis voluntarily ingested PCP, that he was driving the vehicle, or that his resulting impairment caused the accident.  As a result, the Plaintiff has clearly and

concisely pleaded that Globe failed to provide a reasonable explanation of the basis in the insurance policy in relation to the facts.

Globe's failure to state the reasons for its conclusion further supports the conclusion  that the Plaintiff has sufficiently pleaded that Globe denied her insurance claim on the basis of unsupported determinations resulting from its arbitrary failure or refusal to properly perform its claims examination function.  If Globe conducted an investigation and it did not reveal that Michael Davis voluntarily ingested PCP, was driving the accident vehicle, and that Michael's voluntary use of PCP was the cause of the accident and his resultant death then the Plaintiff has sufficiently pleaded that Globe denied her insurance claim based on unsupported determinations resulting from its arbitrary failure or refusal to properly perform its claims examination function.

The Plaintiff asserts in her bad faith count that Globe acted in bad faith by failing to attempt in good faith to settle her claim.  Subsection (F) of Section § 38a-816(6) requires insurers to attempt "in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Conn. Gen. Stat. § 38a-816(6)(F).  Where an insurer cannot prove "with a high degree of certainty" that an exclusion clause is applicable, a duty to attempt in good faith to settle the claim may arise.  *Kelly,* 223 Conn. at 37.  Evidence of a motive to act unreasonably is necessary but not sufficient to proof of bad faith against an insurer.  *Craig v. Colonial Penn Ins. Co.,* 335 F. Supp. 2d 296, 306 (D. Conn. 2004).  Here the face amount of the accidental death rider combined with Plaintiff's assertions that her claim was denied without justifiable cause are

sufficient to establish the requisite motive and factual basis for Plaintiff's bad faith claim.  Accordingly, the Defendant's motion to dismiss Count 2 of the complaint is DENIED.

### b. CUIPA Through CUTPA Misrepresentation Claim

The Plaintiff alleges violations of four subsections of the Connecticut Unfair Insurance Practices Act ("CUIPA") contained in Conn. Gen. Stat. § 38a-816(6),[2] by way of the Connecticut Unfair Trade Practices Act ("CUTPA").  Globe urges the Court to dismiss this claim because Davis has failed to allege that Globe's alleged misconduct is more than an isolated act and does not rise to the level of a general business practice.

CUIPA does not provide a private right of action.  However, the Connecticut Supreme Court has recognized "the existence of a private cause of action under CUTPA to enforce alleged CUIPA violations."  *Mead v. Burns*, 199 Conn. 651, 663 (Conn. 1986).  The Connecticut Supreme Court has recently affirmed that "conduct by an insurance broker or insurance company that is related to the business of providing insurance can violate CUTPA only if it violates CUIPA." *Acordia, Inc.*, 310 Conn. at 9.  Thus, "if a plaintiff brings a claim pursuant to CUIPA alleging an unfair insurance practice, and the plaintiff further claims that the CUIPA violation constituted a CUTPA violation, the failure of the CUIPA claim

---

[2] The Court notes that, in paragraph 15c and d of the fifth page of her complaint, the Plaintiff has erroneously alleged violations of Conn. Gen. Stat. §§ 38a-816(h) and (n), which do not exist.  The Court assumes, based on the statute and on the allegations of the complaint, that Plaintiff intended to allege violations of Conn. Gen. Stat. §§ 38a-816(6)(H) and (N).

is fatal to the CUTPA claim." *Id.* at 10.  Furthermore, the Connecticut Supreme Court has recently held that a plaintiff cannot bring an independent CUTPA claim alleging an unfair insurance practice unless the practice first violates CUIPA, as "the legislative determinations as to unfair insurance practices embodied in CUIPA are the exclusive and comprehensive source of public policy in this area." *Id.* at 12.

Section 38a-816 of the CUIPA proscribes "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance," including "unfair claim settlement practices."  Conn. Gen. Stat. §38a-816(6). Unfair claim settlement practices constitute a CUIPA violation when they are "[c]ommitt[ed] or perform[ed] with such frequency as to indicate a general business practice."  Conn. Gen. Stat. §38a-816(6).  Specifically, the Plaintiff alleges that Globe has violated subsections (C), (D), (H), and (N), which prohibit an insurance provider from:

> (C) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; . . .

> (D) refusing to pay claims without conducting a reasonable investigation based upon all available information; . . .

> (H) attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application; . . . [or]

> (N) failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

Conn. Gen. Stat. §§ 38a-816(6)(C), (D), (H), (N).

Pursuant to CUIPA's requirement that an unfair claim settlement practice be committed or performed with such frequency as to indicate a general business practice to be actionable under CUIPA, "claims of unfair settlement practices under CUIPA require a showing of more than a single act of insurance misconduct." *Mead*, 199 Conn. at 659.  *See also Acordia, Inc.*, 310 Conn. at 13 ("this court held in *Mead* that, because a single failure to pay a valid insurance claim in violation of § 38a–816 (6)(D) does not violate CUIPA, it does not violate CUTPA"); *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 849 (Conn. 1994) ("In requiring proof that the insurer has engaged in unfair claim settlement practices 'with such frequency as to indicate a general business practice,' the legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct."); *Quimby v. Kimberly Clark Corp.*, 28 Conn. App. 660, 672 (Conn. App. Ct. 1992) ("for a plaintiff to allege CUIPA . . . violations successfully the plaintiff must allege more than a singular failure to settle a plaintiff's claim fairly.  The plaintiff must allege that the defendant has committed the alleged wrongful acts with such frequency as to indicate a general business practice"); *W. v. Allstate Ins. Co.*, FSTCV125013961S, 2013 WL 1277174, at *2 (Conn. Super. Ct. Mar. 7, 2013) ("A plaintiff alleging an 'unfair claim settlement practice' pursuant to General Statutes § 38a–816(6), CUIPA, however, cannot circumvent the requirement that conduct must be a 'general business practice,' and instead allege an isolated act of misconduct, even though that could potentially suffice for a CUTPA claim"); *Ensign Yachts, Inc. v. Arrigoni*, 3:09-CV-209 (VLB), 2010 WL 918107 (D. Conn. Mar. 11, 2010) (quoting *Lees, supra*).

**13**

Here, the Plaintiff has alleged four CUIPA violations stemming from the denial of her claim for accidental death benefits under the Policy.  She has failed to allege that this singular act of alleged misconduct, however, amounts to a general business practice such that her CUIPA claim would be viable.  Instead, Plaintiff alleges misconduct that amounts to a nearly word-for-word recitation of four unfair claims practices as enumerated by Conn. Gen. Stat. § 38a-816(6), without any further allegation that the defendant has acted similarly in the handling of any other claim by any other claimant, and without any allegation that the alleged misconduct constituted a general business practice or occurred with any frequency.  Such conclusory allegations do not suffice.  The Court therefore dismisses Plaintiff's CUIPA claim for failure to plead a "general business practice."  *See Hawkeye, LLC v. Zurich Am. Ins. Co.*, 3:10-CV-899 JCH, 2011 WL 1216408, at *1-2 (D. Conn. Mar. 29, 2011) (dismissing 38a-816(6) claim where plaintiff cited to eight cases filed against insurer of unfair claims settlement behavior, several of which appeared substantively similar, but where plaintiff failed to explain status of cases; "[c]ourts in this district have consistently dismissed claims under section 38a–816(6) that failed to include factual allegations sufficient to make a claim of a 'general business practice' plausible"); *Lees*, 229 Conn. at 849 ("The gravamen of the plaintiff's claim is that the defendant unfairly failed to settle her claim, and her claim alone.  We conclude that the defendant's alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a 'general business

practice' as required by § 38a–816(6)"); *Quimby*, 28 Conn. App. at 672 ("Here, the plaintiff's complaint is based wholly on the defendant's alleged failure to settle only the plaintiff's workers' compensation claim properly.  She makes no allegations that the defendant has similarly failed to settle similar claims presented by other claimants properly and, accordingly, has failed to allege properly that the defendant has committed the alleged wrongful acts 'with such frequency as to indicate a general business practice.' Her claim, therefore, must fail."); *Starview Ventures, LLC v. Acadia Ins.*, CV065003463S, 2006 WL 3069664, at *3 (Conn. Super. Ct. Oct. 17, 2006) (unfair claim settlement could not survive motion to strike where "the plaintiff's fourth count does not allege that Acadia has treated other claimants unfairly in a manner that constitutes a general business practice.  Even construing that count of the complaint in a light most favorable to the nonmoving party, the plaintiff's allegations merely establish multiple acts of misconduct relating to a single insurance transaction," and where "a majority of superior courts have determined that allegations of unfair claims settlement practices in the handling of different components of the same claim are insufficient to demonstrate a general business practice in violation of CUIPA or CUTPA.").  *But see Wirth v. Progressive Cas. Ins. Co.*, CV095012844S, 2010 WL 654392 (Conn. Super. Ct. Feb. 14, 2010) (claim was sufficient where plaintiff alleged that "[t]he defendant's unfair conduct occurred with such frequency so as to indicate a general business practice in that the conduct was carried out repeatedly in various and different manners over a prolonged period of time" and that "[t]he frequency of the defendant's unfair settlement practices,

as evidenced in their dealings with both this plaintiff as well as others, indicates a general business practice of the defendant, in violation of CUTPA.").

Lastly, Globe argues that Davis' CUTPA claim must fail because it does not satisfy the "cigarette rule" because a simple breach of contract may not serve as a basis for a CUTPA claim.

> It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule6 by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons].... All three criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

*Am. Car Rental, Inc. v. Comm'r of Consumer Prot.*, 273 Conn. 296, 305-06 (Conn. 2005) (internal quotation marks and citation omitted).  The Connecticut Supreme Court addressed the cigarette rule in the context of insurance related practices claims recently in *State v. Acordia, Inc.*, 310 Conn. 1 (Conn. 2013):

> Under the first prong of the cigarette rule, whether a business practice violates CUTPA depends on whether the practice, 'without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness....' Because CUIPA provides the exclusive and comprehensive source of public policy with respect to general insurance practices, we conclude that, unless an insurance related practice violates CUIPA or, arguably, some other statute

> regulating a specific type of insurance related conduct, it
> cannot be found to violate any public policy and, therefore, it
> cannot be found to violate CUTPA.

310 Conn. at 12.  Thus, although Plaintiff has sufficiently pleaded that Globe

unjustifiably denied her claim without explanation in violation of Connecticut law,

had she established a broader practice of such denials her CUIPA claim would

survive.  Having asserted a single act, however, her CUTPA claim must fail.  For

the foregoing reasons, Plaintiff's CUIPA and CUTPA claims in count 3 are

DISMISSED.

### c.  Intentional Infliction of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress, a

plaintiff must demonstrate "(1) that the actor intended to inflict emotional distress

or that he knew or should have known that emotional distress was the likely

result of his conduct; (2) that the conduct was extreme and outrageous; (3) that

the defendant's conduct was the cause of the plaintiff's distress; and (4) that the

emotional distress sustained by the plaintiff was severe."  *Watts v. Chittenden*,

301 Conn. 575, 586 (Conn. 2011) (quoting *Appleton v. Bd. of Education*, 254 Conn.

205, 210 (Conn. 2000)).  "Whether a defendant's conduct is sufficient to satisfy the

requirement that it be extreme and outrageous is initially a question for the court

to determine.... Only where reasonable minds disagree does it become an issue

for the jury."  *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 527 (Conn.

2012).  *See also Cassotto v. Aeschliman*, 130 Conn. App. 230, 235 (Conn. App. Ct.

2011) (same); *Winter v. Northrup*, 334 F. App'x 344, 347 (2d Cir. 2009) (same).  "[I]n

assessing a claim for intentional infliction of emotional distress, the court

performs a gatekeeping function.  In this capacity, the role of the court is to determine whether the allegations of a complaint, counterclaim or cross complaint set forth behaviors that a reasonable fact finder could find to be extreme or outrageous.  In exercising this responsibility, the court is not fact finding, but rather it is making an assessment whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress."  *Hartmann v. Gulf View Estates Homeowners Ass'n, Inc.*, 88 Conn. App. 290, 295 (Conn. App. Ct. 2005); *Gagnon v. Housatonic Valley Tourism Dist. Comm'n*, 92 Conn. App. 835, 847 (Conn. App. Ct. 2006) (same).

> Liability for intentional infliction of emotional distress
>
> > requires conduct that exceeds all bounds usually tolerated by decent society.... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! ... Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

*Perez-Dickson*, 304 Conn. at 527 (quoting *Appleton*, 254 Conn. at 210–11).  *See also Cassotto*, 130 Conn. App. at 236 ("Although the defendants' alleged behavior no doubt was hurtful and distressing to the plaintiff, plaintiffs must necessarily

be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind"). Moreover, "wrongful motivation by itself does not meet the standard for intentional infliction of severe emotional distress; rather, it is the act itself which must be outrageous." *Perez-Dickson*, 304 Conn. at 528 (citation omitted).

Globe argues that Davis' emotional distress claim must be dismissed because nowhere has Plaintiff alleged behavior that has exceeded all bounds usually tolerated by decent society. Davis has failed to respond to Globe's argument for dismissal in any way in her opposition brief, which is devoid of any mention of her emotional distress claim. Thus, the Court deems this claim to be abandoned. *Paul v. Bank of Am., N.A.*, 3:11-CV-0081 JCH, 2011 WL 5570789, at *2 (D. Conn. Nov. 16, 2011) ("When a party 'offer[s] no response' to its opponent's motion to dismiss a claim, that claim is abandoned") (internal citation omitted); *W.R. v. Conn. Dep't of Children & Families*, 3:02CV429 (RNC), 2003 WL 1740672, at *2 n.5 (D. Conn. Mar. 24, 2003) (claim for damages under state law claims deemed abandoned where plaintiffs failed to respond to arguments for dismissal in defendants' motion to dismiss); *Martinez v. City of New York*, 11 CIV. 7461 JMF, 2012 WL 6062551, at *1 (S.D.N.Y. Dec. 6, 2012) ("A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'") (internal citation omitted); *Lipton v. Cnty. of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (same).

Plaintiff's apparent abandonment of this claim finds support in the law as her complaint fails to allege facts sufficient to constitute the requisite degree of

**19**

extremis either in Globe's conduct or her response.  In *Carroll v. Allstate Ins. Co.,* 262 Conn. 433, 815 (Conn. 2003), the Connecticut Supreme Court vacated a judgment following a jury verdict in favor of the insured on his emotional distress claim in a case in which the insured made a fire damage claim, which the insurer denied after the insurer challenged the insured's claim of an accidental fire, hired an investigator who conducted an inadequate investigation, and erroneously concluded that the fire was caused by arson.  In addition, Plaintiff claims simply that she suffered "emotional distress," not severe emotional distress.  [Dkt. 1, Compl. ¶ 19].  *See Stevens v. Allstate Ins.*, No. CV00071957S, 2002 WL 237330 (Conn. Super. Ct. Jan. 24, 2002) (insurer's failure to promptly pay insured's property damage  claim under homeowner's insurance policy did not give rise to cause of action against insurer for intentional infliction of emotional distress; insurer's conduct was not extreme and outrageous, and insured did not allege that he sustained severe emotional distress).  Plaintiff's intentional infliction of emotional distress claim in count 4 is thus DISMISSED.

## V.    Conclusion

For the foregoing reasons, Defendant's [Dkt. #19] Motion to Dismiss the Complaint in part is GRANTED in part and DENIED in part.  Specifically, Plaintiff's claims for CUIPA and CUTPA violations and intentional infliction of emotional distress in counts 3 and 4 are dismissed, while Plaintiff's claim for breach of the covenant of good faith and fair dealing in count 2 remains live.  Plaintiff's breach of contract claim in count 1, which was not addressed in Defendant's motion, is also extant.

**20**

**IT IS SO ORDERED.**

_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: September 27, 2013**